ELENITA YU, Plaintiff-Appellant, v. GARY L. CLAYTON, Director of the Department of Registration and Education, *et al.*, Defendants-Appellees.

First District (2nd Division)   No. 85—2858

Opinion filed September 2, 1986.

William J. Larned, of Chicago, for appellant.

Neil F. Hartigan, Attorney General, of Springfield (Roma Jones Stewart and Karin Kepler, Assistant Attorneys General, of Chicago, of counsel), for appellees.

JUSTICE SCARIANO delivered the opinion of the court:

Plaintiff appeals from a circuit court order upholding the decision of the Department of Registration and Education (Department) to deny her a license as a registered professional nurse. We affirm.

Plaintiff passed the National Council Licensure Examination (NCLEX) in Wisconsin in July 1984, and was subsequently licensed as a registered nurse in that State. She then applied for licensure by endorsement in Illinois, but the Department denied her application on the ground that she did not qualify under section 22 of the Illinois Nursing Act (Ill. Rev. Stat. 1983, ch. 111, par. 3428.2), which prohibits licensing of persons failing the exam six times until they have retaken the entire course of nursing study. Wisconsin had no "six-failure" rule, and the Department concluded that licensure by endorsement could not be granted in plaintiff's case because the Wisconsin requirements were not "substantially equal" to those of Illinois, as required by section 20 of the Illinois Nursing Act (Ill. Rev. Stat. 1983, ch. 111, par. 3428).

The record reveals that plaintiff failed the nursing licensure exam

seven times and passed it on her eighth attempt. She made her first three attempts in Illinois in February and July of 1981, and in February 1982. During that time Illinois utilized the National Test Pool Examination (NTPE), which consisted of five parts, each covering a different subject matter. A passing score of 350 was required for each separately graded portion, and applicants were given credit for those sections of the exam that they had previously passed and were required to retake only those parts that they had failed. After her third attempt under this format, plaintiff had passed all but the psychiatric portion of the exam.

A new exam, the NCLEX, was introduced nationally in July 1982. It was not divided into parts. Instead, all nursing topics were integrated, and a single grade was issued for the entire exam. Successful applicants needed a total score of 1600, and they were no longer given credit for any passed portions of the earlier NTPE. Plaintiff took the NCLEX four successive times and failed each time. Finally, she passed in Wisconsin on her fifth administration of the NCLEX.

After denial of her application for licensure by endorsement, plaintiff requested a hearing, which was held before the Committee of Nurse Examiners on February 7, 1985. At the hearing, the Department stipulated that plaintiff satisfied all the requirements of the Illinois Nursing Act except for the six-failure limitation of section 22 (Ill. Rev. Stat. 1983, ch. 111, par. 3428.2). Plaintiff contended that the Department should not count the failures that she accrued before July 1982, when the legislature amended section 22 of the Illinois Nursing Act (Pub. Act 82—795 sec. 2, eff. July 21, 1982 (1982 Ill. Laws 1492, 1496-97)), and that she was therefore eligible for licensure by endorsement. The Committee of Nurse Examiners voted to refer the case to legal counsel for an opinion. Counsel for the Department delivered a memorandum to the Committee on March 8, 1985, interpreting the statutory change. On March 8, 1985, the Committee voted to deny plaintiff licensure by endorsement. The Director of the Department approved the Committee's recommendation on March 11, 1985, and plaintiff was informed of the decision by a letter, which included the legal opinion of the Department's general counsel.

Plaintiff filed a complaint for administrative review in the circuit court of Cook County on April 30, 1985. On November 4, 1985, the circuit court affirmed the denial of her application for licensure by endorsement. Plaintiff now appeals.

Plaintiff first argues that defendants improperly relied on a repealed statute in determining that failure of a portion of the NTPE was to be counted under the six-failure rule. Section 22 of the Illinois

Nursing Act (Ill. Rev. Stat. 1981, ch. 111, par. 3428.2), was amended by Public Act 82—795, effective July 21, 1982. (See 1982 Ill. Laws 1491, 1497.) Prior to the amendment, the statute specified that registered nursing applicants who failed "any examination a total of 6 times or any particular portion thereof" would be ineligible to take any further exams until they had recompleted the entire course of nursing study. The amendment deleted the phrase "or any particular portion thereof" but left the remaining portions of section 22 intact. Plaintiff argues that this deletion manifests a legislative intent that the NTPE exams, which are the only exams divided into portions, not be counted under the six-failure rule.

■■ ■ Plaintiff is correct in suggesting that where words are stricken from a statute by amendment, it generally constitutes repeal. (See *City of Champaign v. Overmeyer's Inc.* (1958), 18 Ill. App. 2d 523, 526, 152 N.E.2d 752, 754; *Dworak ex rel. Allstate Insurance Co. v. Tempel* (1958), 18 Ill. App. 2d 225, 230, 152 N.E.2d 197, 200, aff'd (1959), 17 Ill. 2d 181, 161 N.E.2d 258; *Towers v. Schull* (1955), 3 Ill. App. 2d 358, 365, 122 N.E.2d 62, 65.) Moreover, a change in language that has been administratively interpreted can be read to indicate legislative dissatisfaction with the prior interpretation. (Compare *In re Estate of Zimmerman* (1978), 63 Ill. App. 3d 560, 563, 380 N.E.2d 434, 436, with *Pielet Brothers Trading, Inc. v. Pollution Control Board* (1982), 110 Ill. App. 3d 752, 756, 442 N.E.2d 1374, 1378.) A material change in the language of a statute is presumed to work a change in legal rights. (*Hoover v. May Department Stores Co.* (1979), 77 Ill. 2d 93, 102-04, 395 N.E.2d 541, 546; *Kaplan v. Department of Registration & Education* (1977), 46 Ill. App. 3d 968, 974, 361 N.E.2d 626, 630.) However, this presumption is rebuttable (*O'Connor v. A & P Enterprises* (1980), 81 Ill. 2d 260, 271-72, 408 N.E.2d 204, 209; *Willis v. Ohio Casualty Co.* (1981), 101 Ill. App. 3d 1099, 1103-05, 428 N.E.2d 1061, 1065-67), and the key is that the change must be material.

Where the deleted words are simply surplusage, there is no change in the law in the face of clear contrary legislative intent. For example, in *Scofield v. Board of Education* (1952), 411 Ill. 11, 16-21, 103 N.E.2d 640, 643-45, the supreme court considered a challenge to the constitutionality of an amendment to the School Code that repealed a prior statute fixing voters' qualifications at school elections and enacted a new provision that listed definite qualifications but omitted age and citizenship requirements. The court held that the new legislation was not intended to repeal age and citizenship requirements in school elections, and that the Election Code, which applied

to all other elections, could supply the remaining voter qualifications. Similarly, eliminating the words "or deface" from a provision that made it an offense to "injure or deface" public property was held not to have changed the statute's meaning. *State v. Fahy* (1962), 149 Conn. 577, 183 A.2d 256, *rev'd on other grounds* (1963), 375 U.S. 85, 11 L. Ed. 2d 171, 84 S. Ct. 229 (cited in 1A N. Singer, *Sutherland on Statutory Construction* sec. 22.30, at 265 (1985)).

The change in this case was simply a housekeeping one, to conform the statute to the new testing format, because it was no longer possible to fail portions of exams under the NCLEX. The primary aim of statutory construction is to give effect to legislative intent as expressed in the statute. (*City of East Peoria v. Group Five Development Co.* (1981), 87 Ill. 2d 42, 46-47, 429 N.E.2d 492, 494; *Hettermann v. Weingart* (1983), 120 Ill. App. 3d 683, 690, 458 N.E.2d 616, 621.) Plaintiff invites us to disregard the *express* statement in the statute, that persons failing the examination six times must retake the entire program of nursing study before reapplying, in favor of an interpretation that is, at best, based on an *implication* from an ambiguous legislative action. We decline the invitation.

In order to fulfill its function and carry out the statutory mandate, the Department has had to define "failure." A person can only pass or fail an examination, there is nothing in between. Plaintiff cannot now contend that she should be considered to have passed the NTPE. The Department's earlier definition of failure, to include failure of any portion of the exam, was consistent with the NTPE's national usage. At one time, this definition was also supported by the explicit language of the Illinois Nursing Act, but it is clear that deletion of the express statutory authority did not suddenly render the Department's definition *ultra vires*. The change is ambiguous at best, and nothing in the legislative debates on the 1982 amendments to the Illinois Nursing Act (Pub. Act 82—795) indicates any intention to exclude NTPE failures from the six-failure rule.

Plaintiff next argues that the Department acted arbitrarily and capriciously in counting her three NTPE failures under the six-failure rule. As noted above, when an applicant previously obtained a passing score of 350 on one portion of this exam, he or she did not have to retake that portion on subsequent administrations. Plaintiff states in her brief, that she "does not suggest that credit for passed portions must have been carried over to NCLEX: plaintiff does suggest however, that fairness dictates disregard of all NTPE results under Section 22 of the Nursing Act if said results are to be disregarded for purposes of carry-over credit." Plaintiff argues that this court

should not hesitate to intervene where an agency has acted arbitrarily and capriciously. See *Southern Illinois Asphalt Co. v. Pollution Control Board* (1975), 60 Ill. 2d 204, 207, 326 N.E.2d 406, 408.

The Department's major purpose in licensing is to prevent injury to the public by ensuring that the nursing profession is practiced with honesty and integrity and that the unskilled are excluded. (See Ill. Rev. Stat. 1985, ch. 111, pars. 3402, 3403; *cf. Strojanoff v. Department of Registration & Education* (1979), 72 Ill. App. 3d 584, 590, 391 N.E.2d 10, 16.) The Department argues that its decision to count all of plaintiff's failures was reasonable and in furtherance of the Department's objective to protect the general public. We agree. An agency charged with enforcing a statute is given wide discretion in adopting rules or policies to carry out its statutory duties. (*Oak Liquors, Inc. v. Zagel* (1980), 90 Ill. App. 3d 379, 382, 413 N.E.2d 56, 59.) "A reasonable construction of an ambiguous statute by the government officers or department charged with its enforcement, if contemporaneous, consistent, long-continued, and in concurrence with legislative acquiescence, creates a presumption of correctness which is only slightly less persuasive than a judicial construction of the same act." *People ex rel. Watson v. House of Vision* (1974), 59 Ill. 2d 508, 514-15, 322 N.E.2d 15, 19, *cert. denied* (1975), 422 U.S. 1008, 45 L. Ed. 2d 671, 95 S. Ct. 2631.

▪ The Department's interpretation of section 22 of the Illinois Nursing Act (Ill. Rev. Stat. 1983, ch. 111, par. 3428.2), in this case is entirely consistent with its prior practice, because a failure of any single portion of the exam when the NTPE was used was counted as a failure of the entire test under the six-failure rule. While an agency's long-term adherence to a particular interpretation of a statute is not prerequisite to judicial deference, it adds weight to the validity of the agency construction. (See *Illinois Consolidated Telephone Co. v. Illinois Commerce Com.* (1983), 95 Ill. 2d 142, 153-54, 447 N.E.2d 295, 300 (and cases cited therein).) Plaintiff agrees that it is impractical under the new NCLEX system to give credit for portions that were passed on prior NTPE exams. We concluded that, in considering the applications of persons who had passed the newer NCLEX, the agency could reasonably continue to count NTPE failures, although it is now impossible to give credit for passed portions, and that in so doing it acted within range of the discretion vested in it.

▪ Plaintiff next argues that a memorandum of the Department, referred to as the Clayton memorandum, demonstrated that the Department was applying its rules inconsistently. The Clayton memorandum announced that pre-July 1980 failures would not be counted

against any applicants. This memorandum does not affect plaintiff, however, because she did not take her first test until February 1981.

Before 1980, the Illinois Nursing Act did not limit the number of failures an applicant could accrue, but the Department, by rule, rejected applicants who had failed the examination three times in any State. (See *Burke v. Department of Registration & Education* (1980), 83 Ill. App. 3d 647, 649, 404 N.E.2d 961, 963.) The Illinois Nursing Act was amended effective July 1, 1980 (Pub. Act 81—1168 (1979 Ill. Laws 4474-75, 4478)), to require additional study in the failed subjects after three examinations, and the recompletion of the entire course of study after six failures. (See Ill. Rev. Stat. 1981, ch. 111, par. 3428.2.) This amendment caused some confusion. For applicants seeking licensure through *examination*, all failures were counted under the six-failure rule. However, for applicants seeking licensure by *endorsement*, the Department did not count failures occurring before July 1, 1980. The Clayton memorandum announced the Department's decision to disregard all pre-July 1980 failures of any applicant in either category.

The Clayton memorandum is irrelevant to the present case. All tests taken after July 1980 are counted, including all the exams that plaintiff took. If, as plaintiff contends, all her failures before July 1982 should be excluded simply because all failures before July 1980 are not counted against others, why not exclude all failures occurring in 1983 and 1984 as well? To stand up to scrutiny under the equal protection clause, a statute or rule, like the rule here, that is not based upon a suspect classification or does not impair a fundamental right, need only be "rationally related" to a legitimate government objective. (*People v. Raseaitis* (1984), 126 Ill. App. 3d 600, 605, 467 N.E.2d 1098, 1102.) The 1980 change in the Illinois Nursing Act provided a rational basis for exempting pre-July 1980 failures. While the 1982 change in test formats would have similarly provided a rational basis to exempt pre-1982 failures, it did not compel the Department to do so. (See *Friedman & Rochester, Ltd. v. Walsh* (1977), 67 Ill. 2d 413, 421-22, 367 N.E.2d 1325, 1328-29 (the equal protection clauses of the State and Federal constitutions do not prohibit pursuit of change "one step at a time" or application of a remedy to one selected phase of a situation while neglecting others).) Plaintiff's claim of inconsistency and unequal treatment must be rejected.

Plaintiff also argues that counting NTPE failures deprived her of due process because credit for passed portions was eliminated when the exam was changed to the NCLEX format. Plaintiff quotes *Coldwell Banker Residential Real Estate Services of Illinois, Inc. v. Clayton* (1985), 105 Ill. 2d 389, 397, 475 N.E.2d 536, 540, in stating

that "[i]t is a well-established constitutional principle that every citizen has a right to pursue a trade, occupation, business or profession[; such] inalienable right constitutes both a property and liberty interest entitled to protection of the law as guaranteed by the due process clauses of the Illinois and Federal constitutions." The United States Supreme Court has recognized a liberty interest to practice a profession. (See *Schware v. Board of Bar Examiners* (1957), 353 U.S. 232, 238, 1 L. Ed. 2d 796, 801, 77 S. Ct. 752, 756.) However, plaintiff has not been prevented from practicing the profession that she has been trained in, she has simply been subjected to the same requirements as other candidates for licensure, and according to defendants, she has failed to satisfy those requirements. Tests and qualifying exams can satisfy the hearing requirements of procedural due process (*Lucero v. Ogden* (10th Cir. 1983), 718 F.2d 355, 359, *cert. denied* (1984), 465 U.S. 1035, 79 L. Ed. 2d 706, 104 S. Ct. 1308; *Poats v. Givan* (7th Cir. 1981), 651 F.2d 495, 496-500; *Tyler v. Vickery* (5th Cir. 1975), 517 F.2d 1089, 1103-05, *cert. denied* (1976), 426 U.S. 940, 49 L. Ed. 2d 393, 96 S. Ct. 2660; 2 K. Davis, *Administrative Law Treatise* sec. 12:12 (2d ed. 1979)); thus, the NCLEX may have provided plaintiff with all the process that she was due under the constitution. Moreover, plaintiff was given a full and fair hearing before the Committee to challenge the denial of her license. (See *Munoz v. Department of Registration & Education* (1981), 101 Ill. App. 3d 827, 829, 428 N.E.2d 1137, 1138-39, *cert. denied* (1982), 459 U.S. 839, 74 L. Ed. 2d 81, 103 S. Ct. 82 ("The essence of procedural due process is notice and an opportunity to be heard").) Plaintiff does not raise any issue concerning the sufficiency of the procedures at the hearing. Clearly plaintiff's procedural due process rights were respected.

■ Viewed in another light, plaintiff's argument may be that she has an entitlement to "carry-over credit" for those portions of the NTPE that she passed. Such an argument must fail. Property interests are defined by State law. (*Cleveland Board of Education v. Loudermill* (1985), 470 U.S. 532, 538, 84 L. Ed. 2d 494, 501, 105 S. Ct. 1487, 1491.) When plaintiff was denied a nurse's license for failing the exam more than six times, the NCLEX was in use and nurses no longer had a right to carry-over credit under Illinois law—indeed, such credit was no longer practicable. The change in State law, when the Department adopted the new form of testing, changed the nature of plaintiff's property interest, if any. Procedural due process is not concerned with determinations that apply across the board to all members of a "legislatively" defined class. (See *Atkins v. Parker* (1985),

472 U.S. 115, 128-31, 86 L. Ed. 2d 81, 92-94, 105 S. Ct. 2520, 2529-31.) Rather, it requires procedural protections to help assure the correctness of a determination that a particular individual falls within a given class. (See *Goldberg v. Kelly* (1970), 397 U.S. 254, 267, 25 L. Ed. 2d 287, 298, 90 S. Ct. 1011, 1020.) Plaintiff had no property interest in carry-over credit under the NTPE when she took the NCLEX or when she applied for licensure by endorsement; accordingly, her procedural due process claim must fail.

██ In her reply brief, plaintiff implies that she is asserting rights under *substantive* due process. Plaintiff, quoting *Long v. Thorton Township High School District 205* (N.D. Ill. 1979), 82 F.R.D. 186, 191, argues that "[d]ue process must be determined by what is fair and reasonable in light of the totality of circumstances." Plaintiff has not indicated how the prior law could have induced her to change her position in reasonable reliance. While the Department's decision to count NTPE failures was detrimental to plaintiff, we do not believe that it can be called unfair. Plaintiff's "substantive due process" claim is without merit.

██ Finally, although the facts in this case are not disputed, plaintiff complains that the Department did not make findings of fact and conclusions of law in announcing its decision. We disagree. The record contains findings of fact. A report of the Committee of Nurse Examiners indicates the name of the college where plaintiff received her medical training, her final NCLEX score, and the dates of the eight test administrations that she took. These facts are sufficient to explain the Department's decision. In addition, the Department's legal position, as set out in a written memo by its counsel, was attached to the report that was sent to plaintiff and her attorney.

The decision of the circuit court affirming the Department's denial of licensure is affirmed.

Affirmed.

BILANDIC, P.J., and STAMOS, J., concur.